IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

[PHILADELPHIA, MARCH 22, 1841.]

## THE SOUTHWARK INSURANCE CO. *against* KNIGHT.

IN ERROR.

1. A party who offers in evidence a deposition taken on his behalf, must read the whole, and cannot select portions and omit others, on the ground that the parts omitted are properly rebutting evidence.

2. And if he be permitted by the court to read portions only of a deposition on this ground, the irregularity is not cured by an offer made by his counsel in summing up, to read the parts which had been omitted; especially if, after objection by the counsel on the other side, the offer is withdrawn.

THIS case came before the court on a writ of error to the District Court for the City and County of Philadelphia.

In the court below, Charles J. Knight brought an action of covenant against The Southwark Fire Insurance Company, of the county of Philadelphia, upon a policy of Insurance executed by the defendants.

The cause came on for trial before PETTIT, (President) on the 6th of May, 1840, when the plaintiff having given certain testimony, offered to read in evidence certain parts of the deposition of Phineas D. Crosby; to wit, those parts of the deposition only which were included in brackets; and to reserve the remaining parts of the deposition for use as rebutting evidence. The counsel for the defendants objected to the reading of any portion of the deposition unless the whole was read; but the court overruled the objection, and permitted the plaintiff's counsel to read such portions of the deposition as are included in brackets, and to reserve any right he might have to offer the remaining parts of the depositions as rebutting evidence; the learned judge remarking that he would not anticipate what would be the decision should such offer be made. To which decision the counsel for the defendants excepted. The plaintiff's counsel then read such portions of the deposition as are included in brackets as follows, to wit: .

["Phineas D. Crosby, a witness produced by the plaintiff, being duly sworn, doth depose and say, I shall be twenty-two years of age in November next; and reside in Danbury, Connecticut. I was book-keeper and clerk for Knight, and was well acquainted with the clothing business generally. I was with Knight about eight months, ending about September, 1836. During the time I was there, I should think three-fourths of the goods were manufactured by himself; I mean three-fourths of the whole stock at the time when he purchased the goods over three-fourths were unmanufactured; and he manufactured that which was not manufactured, which had been cut in New York. I should think it would cost about fifty per cent. to manufacture clothing generally,] which does not show on his books at all. [I should think the profits on his goods generally were twenty-five per cent.] From the appearance of the books I should think that they were very irregularly kept after I left. I should think Mr. Knight was not competent to keep a set of books regularly. He had a large store and kept a good assortment of clothing. The store was well filled when I left. [He did not sell a great many goods.] I have examined the books of Mr. Knight thoroughly all through; and as they appear now, the invoice of all the goods received by him amounted to $16,716 54, and the whole amount of sales made by him appears from the books to have been $9569 04; this does not show the amount in the store by fifty per cent.; I mean half as much again as I have stated: [Up to the time that I left, I should think that three-fourths of the goods were manufactured by Mr. Knight; after they were thus manufactured they were worth one-half more,] which does not appear on the books. So far as I know the entries on the invoice book A, to page 80, are correct; and the goods stated were received by Mr. Knight. [The goods received from New York were not manufactured; I

(Southwark Ins. Co. v. Knight.)

mean not made up. I think no goods received by Knight were made up; but he might have received some; very few that were made."]

Cross-examined by *F. A. Raybold,* Esq.—"The money paid for making up the goods does not appear on Knight's books; we charged the money; we gave them orders on Hill & Howe; we paid them also."

The plaintiff's counsel then gave certain other depositions in evidence, and closed his case.

The defendants' counsel then called upon the plaintiff's counsel to say whether it was intended to give in evidence the books kept by the plaintiff; to which the plaintiff's counsel replied that the plaintiff did not intend to give them in evidence as part of the plaintiff's case; but that the books were at hand and ready to be produced for use by the defendants whenever the defendants' counsel should make his call for them under his notice, which he had given to the plaintiff to produce them upon the trial.

ˎ The defendants' counsel then stated that they offered no evidence; whereupon under the rule of the court, the counsel for the plaintiff addressed the jury, and was followed by the counsel for the defendants. In the course of the address of the plaintiff's counsel to the jury, he offered to read such parts of the deposition of P. D. Crosby, as had not before been read. The defendants' counsel being asked by the court if he objected, said that he hoped the defendants' counsel would not be put to an objection at this time. The judge remarked, that unless an objection were made, the parts of the deposition now offered might be read; and that if objection were made, the court would consider it. The defendants' counsel thereupon did object. The plaintiff's counsel then said that he did not press the reading; and the omitted parts of the deposition were not read; no further decision on the subject being made by the court.

The plaintiff obtained a verdict; and this writ of error was taken.

The following error was assigned:

"That the court below erred in permitting the counsel for the plaintiffs below, to read in evidence to the jury parts or abstracts of the deposition of Phineas D. Crosby."

Mr. *Raybold* and Mr. *Meredith,* for the plaintiffs in error.

By a rule of the District Court, if the defendant offers no evidence, the plaintiff's counsel goes on, and the defendant has the conclusion. Under this rule the defendants went on. The plaintiff's offer, if it had been in time, might have sufficed; but it was not till after the address to the jury had commenced, and the defendants' witnesses

(Southwark Ins. Co. v. Knight.)

were gone away. We alleged that the books would contradict the witness; and when what he said as to the books was left out, our testimony could not be produced. *D'Homergue* v. *Morgan*, (3 *Wharton*, 26,) settles the rule that parts of depositions can't be read. Here the parts read contained mutilated sentences, and even excluded the cross-examination, and matters not rebutting. It is not a matter of discretion with the court, after the counsel have begun to speak. In *Frederick* v. *Gray*, relied upon on the other side, the witness was brought in by attachment, without the party being in fault. Here the evidence was in the plaintiff's hands, to do with it what he pleased. There was no permission given by the court below : the evidence was withdrawn by the plaintiff after our objection.

Mr. *C. Ingersoll*, contra.

The parts omitted were at first reserved for rebutting evidence, which they certainly were in their nature. The defendant gave no evidence; so that the plaintiff could not use them as rebutting; but he did all he could by offering to read them afterwards. This was within the discretion of the court. *Frederick* v. *Gray*, (10 *Serg. & Rawle*, 182.) The parts omitted were afterwards excluded on the defendants' objection. They gave no evidence, and therefore could not have dismissed witnesses. In *D'Homergue* v. *Morgan*, evidence was admitted after the case was closed. Here the parts left out were irrelevant.

The opinion of the court was delivered by

Sergeant, J.—It was certainly error in the court below to permit the plaintiff to select portions of the depositions of a witness taken by himself, to be read in evidence on the trial, and to omit other parts of the same deposition. It seems to be the same thing as striking out parts of the examination of a witness sworn in the cause at the bar, at the request of the party who called and examined him. This could not be permitted. The party who examines a witness must be considered as presenting the whole as equally authentic, and is estopped from denying the competency of any part of his evidence. He cannot even discredit his own witness, though he may prove the facts to be otherwise than as stated by him. *Stockton* v. *Demuth*, (7 *Watts*, 39.) When a deposition has been taken, the party, therefore, who offers it, must read the whole. If parts of it be manifestly irrelevant, they may, on that ground, be omitted, under the direction of the court: that, however, is not the privilege of the party, but the exercise of a duty by the court, for the despatch of business, and saving of time and trouble.

But it is contended that the plaintiffs offered, afterwards, in the summing up, to read the parts of the deposition which had been

(Southwark Ins. Co. *v.* Knight.)

struck out, and that the defendant's objection to it cured the previous irregularity. I do not, however, think so. The time when the offer was made might have exposed the defendant to difficulty and danger from the absence of his witnesses, and the course of defence he had been obliged to adopt. Besides, the plaintiff, after the defendant's objection, withdrew his offer, by which the matter was left in *statu quo.* Had the plaintiff persisted in his offer, the court must have admitted or rejected it: and if they had rejected it, (which it is very possible they might have done,) the defendant could have rested, as he does now, on his original bill of exceptions.

. For these reasons we think the judgment must be reversed, and a *venire facias de novo* be awarded.

Judgment reversed, and *venire de novo* awarded.