OCTOBER AND NOVEMBER TERM, 1883, No. 185.   OCTOBER 29, 1884.

# The Pittsburg and Birmingham Passenger Railway Company *v.* Boyd.

1. Defendant offered in evidence the cross-examination only of a deposition taken on his behalf. Plaintiff's counsel objected " unless the whole of the deposition be read." The Court ruled : " We will admit the part that is offered, and any part of the deposition that is necessary the plaintiff may offer." *Held*, that the plaintiff was entitled to have the entire deposition read to the jury by the party offering it.

2. Southwark Insurance Co. *v.* Knight, 6 Wharton, 327, followed.

3. The examination-in-chief in the deposition showed the witness to have been in the employ of the defendant. *Held*, that, though a slight circumstance, plaintiff was entitled to have it go to the jury as affecting any question of bias on the part of the witness.

Before MERCUR, C. J.; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Error to Common Pleas, No. 1, of *Allegheny County.*

Feigned issue by The Pittsburgh and Birmingham Passenger Railway Company, claimant, against John Boyd, to determine the ownership of five horses, levied upon as the property of Joseph L. Tipton, trading as Tipton & Craig, at the suit of John Boyd.

Upon the trial in the court below, before COLLIER, J., the plaintiff gave testimony to show that the railway company had four horses that were not suitable for passenger railway use ; that Craig, who was a partner in the firm of Tipton & Craig, horse-dealers, was introduced to the president of the railway company as a man who could get good railway horses ; that the company employed Craig to take these four horses and trade them for others more suitable for the railway business, or to sell or dispose of them and buy others, if necessary, for the company ; that Craig was the employé or agent of the company for that purpose ; that Craig disposed of the four horses and purchased five others, as agreed upon, for the company, and that the five horses levied upon by the sheriff were not the property of Tipton & Craig, but belonged to the railway company, in pursuance of the contract between the company and Craig.

The defendant gave testimony to show that Craig took nine horses with him to West Virginia, where he traded and sold them ; that the five horses levied upon were not

[The Pittsburgh and Birmingham Pass. Railway Co. v. Boyd.]

purchased by Craig, in pursuance of the alleged contract between him and the railway company, but were purchased with partnership money, and were the property of Tipton & Craig.

Defendant's counsel also offered in evidence the cross-examination of the deposition of William Wackerly.

Plaintiff's counsel objected unless the whole of the deposition be read.

By THE COURT: "We will admit the part that is offered, and any part of the deposition that is necessary the plaintiff may offer."

Objection overruled.  Exception by plaintiff.

The following is the deposition :

*William Wackerly*, sworn, says :

I live in Butler county, Pennsylvania; came to Pittsburgh last night; am going away in the morning; I worked for John Boyd in the winter of 1879–80; I left him some time in the spring of 1880; Mr. Boyd sent me over to the stables of the Pittsburgh and Birmingham Passenger Railway Company with one horse; it was a bay horse; I left the horse in the stable of the Birmingham Street Car Company; I gave it to the stable-boss; he was one of the several horses brought from Virginia, belonging to Tipton & Craig; this horse, when I took him to Birmingham stable, was sick; I gave the horse to the stable-boss, and came back to Boyd's stable: that is the last I ever saw of the horse.

*Cross-examination by T. C. Lazear, Esq.:*

Q. How do you know this was Tipton & Craig's horse?

A. He was sent up in a boat in Tipton & Craig's name; I saw cards on the horses in Tipton & Craig's name; I went to the boat and brought the horses up, and they had those cards on; I could not tell whether each of the horses had a card on or not; the cards were fastened to the halter; Mr. Boyd's clerk sent me down to the boat to get the horse and I forgot the clerk's name.

Q. How long had this horse been in Mr. Boyd's stable before you took him over to the Pittsburgh and Birmingham Passenger Railway Company's stable?

A. I couldn't tell you that.

Q. Was it a week, or a day, or an hour?

A. I can't tell you.

Q. Can you tell how long it was from the time you got the horse on the boat till you took him over to that stable?

A. I couldn't tell you that, either.  I don't know the name of the boss at the stable I left this horse with; he

[The Pittsburgh and Birmingham Pass. Railway Co. *v.* Boyd.]

was a little, low, heavy-set man; I couldn't tell how long the horse had been sick; I think he had the distemper."

. May 23, 1882, verdict for defendant, upon which judgment was afterwards entered.

Plaintiff then took out a writ of error, and assigned as error the action of the Court in admitting in evidence the cross-examination of the deposition of William Wackerly without requiring the whole deposition to be read.

*H. W. Wier* and *Thomas C. Lazear* for plaintiff in error.

A party who offers in evidence a deposition taken in his behalf must read the whole, and cannot select portions and omit others: Southwark Ins. Co. *v.* Knight, 6 Wh., 329; Logan *v.* McGinnis, 12 Penna., 27.

The suggestion of the Court that the plaintiff might read the examination-in-chief was a concession we could not accept, for this would be to give credit to the witness, and in effect to make him our own. We were entitled especially to have his statement brought to the attention of the jury that the witness had been in defendant's employ, being a circumstance showing bias, without being compelled to read the deposition ourselves.

*Knox & Reed* and *A. M. Brown* for defendant in error.

The portion of the deposition not read was regarded as wholly irrelevant to the issue, and defendant's counsel merely proposed to read the cross-examination, which contained pertinent and relevant matter. Plaintiff's counsel did not read the omitted part, because it was wholly against the plaintiff and in favor of the defendant. Its admission or exclusion did not, and could not, prejudice either party: Breyfogle *v.* Beckley, 16 S. & R., 264; Edgar *v.* Boies, 11 S. & R., 445; Hosie *v.* Gray, 71 Penn., 198; Irwin *v.* Trego, 22 Id., 368; Hoffer *v.* Miller, 53 Id., 156; Howell *v.* McCoy, 3 Rawle, 256.

January 5, 1885, the opinion of the Court was delivered by PAXSON, J:

It was held in the Southwark Insurance Company *v.* Knight, 6 Wharton, 327, that where a party offers in evidence a deposition taken on his own behalf, he must, if required by the other party, read the whole, and cannot select some portions and omit others. See also Logan *v.* McGinnis, 2 Jones, 27.

Upon the trial below, the defendant's counsel offered

[Riddle *v.* Stewart.]

in evidence a portion only of a deposition taken on his behalf. The portion offered was the cross-examination. The plaintiff's counsel objected " unless the whole of the deposition be read." The learned Court ruled : " We will admit the part that is offered, and any part of the deposition that is necessary the plaintiff may offer." This is the ruling as it appears in the record as printed, and differs slightly from that set out in the assignment of error. As it is wrong either way, the difference is not very material.

It was certainly an anomalous proceeding to offer the cross-examination in chief. The permission accorded the plaintiff to offer or read the balance of the deposition does not meet the difficulty. The examination-in-chief was not in evidence, and what is not in evidence cannot be read to the jury. The only way open to the plaintiffs to get it before the jury was to offer it in evidence themselves. This would have made the witness their own to that extent, and even the reading of it by the plaintiffs under the circumstances would have been a qualified indorsement of the witness.

The plaintiffs were entitled to have the entire deposition read to the jury by the party offering it.

It was urged, however, that the error was technical, and not hurtful to the plaintiff. If we could safely say so we would not reverse, but just what effect the testimony of the witness may have had upon the jury we do not know. The defendant evidently regarded the examination-in-chief as unfavorable, or he would have offered it in evidence and read it. The examination-in-chief showed the witness to have been in the employ of the defendant. This is a slight circumstance, but it was in the deposition, and the plaintiffs were entitled to have it go to the jury, as affecting any question of bias on the part of the witness.

Judgment reversed and a *venire facias de novo* awarded.